OPINION
{¶ 1} Defendant-appellant, Laura M. Schmucker, appeals from the judgment entry of the Portage County Municipal Court, Ravenna Division, in which she was found guilty of Driving Under Suspension, in violation of R.C. 4510.14, a first degree misdemeanor. For the following reasons, we affirm the decision of the court below.
 {¶ 2} On July 28, 2007, Laura Schmucker was operating her vehicle southbound on South Street in the Village of Garrettsville, Portage County, Ohio, at *Page 2 
approximately 7:09 p.m. Patrolman Phillip Dick observed Schmucker operating her vehicle and upon passing her, he noticed that the vehicle's rear license plate was different from the front plate. Schmucker had a temporary license placard affixed to the rear of her vehicle and a metal license plate, with a different license number, attached to the front. Patrolman Dick then stopped Schmucker's vehicle to investigate.
 {¶ 3} When Patrolman Dick asked for her driver's license and registration, Schmucker stated she did not have her driver's license; however, she provided Dick with paperwork indicating that her license was suspended and she had occupational driving privileges. Dick phoned dispatch to confirm if she was in fact driving to or from her job; however, he discovered she was not scheduled to work that day. In addition, her privileges were Monday through Friday from 6:30 a.m. to 4:30 p.m.; she was pulled over on a Saturday evening. Schmucker indicated to Patrolman Dick she was aware she should not be driving; nevertheless, she needed to purchase a pack of cigarettes. Patrolman Dick then placed Schmucker in the back of his vehicle, inventoried her car, and requested a tow truck.
 {¶ 4} On July 30, 2007, a traffic ticket was filed alleging Schmucker operated her vehicle under suspension, in violation of R.C. 4510.14. Schmucker moved to suppress evidence from her traffic stop and the matter proceeded to a hearing. Schmucker alleged that the traffic stop was not reasonable under the circumstances; further, her detention was not justified by specific and articulable facts.
 {¶ 5} On October 15, 2007, the trial court heard testimony from Patrolman Dick indicating he had stopped Schmucker because she had two different plates on her car and he wanted to further investigate. Upon additional investigation, Patrolman Dick discovered Schmucker was driving under suspension from a previous conviction of *Page 3 
Operating a Vehicle while Intoxicated. Patrolman Dick additionally discovered Schmucker was not driving in accordance with her limited driving privileges.
 {¶ 6} The trial court reviewed Schmucker's basis for her Motion to Suppress. Schmucker relied on the reasoning set forth in State v.Chatton (1984), 11 Ohio St.3d 59. The court in Chatton held that when an officer approaches a vehicle and observes a valid temporary license plate, the driver may not be further detained to determine the validity of the defendant's license. Id. at 63. The court held thatChatton can be distinguished from the instant case because Schmucker's vehicle displayed two different license plates. Thus, the court overruled Schmucker's Motion to Suppress, finding Patrolman Dick had reasonable suspicion to stop and detain Schmucker.
 {¶ 7} On December 18, 2007, the case proceeded to a bench trial. At trial, Patrolman Dick's testimony echoed the testimony from the suppression hearing. The court found Schmucker guilty of Driving Under Suspension, a first degree misdemeanor. On January 7, 2008, she was sentenced to 180 days in jail and fined $1,000 and court costs. Additionally, 177 days in jail and $950 of the fine were suspended provided Schmucker met certain conditions. The court also imposed a 30 day license suspension, with credit for time served. The execution of the sentence was stayed pending this appeal.
 {¶ 8} Schmucker timely appeals and raises the following assignments of error:
 {¶ 9} "[1.] The trial court erred to the prejudice of Ms. Schmucker when it overruled Schmucker's Motion to Suppress evidence flowing from a traffic stop in violation of Ms. Schmucker's Federal and Ohio constitutional right to be free from unreasonable searches and seizures. *Page 4 
 {¶ 10} "[2.] The trial court erred in failing to grant Ms. Schmucker's Motion for Judgment of Acquittal, as the evidence presented was not legally sufficient to support a conviction."
 {¶ 11} "At a hearing on a motion to suppress, the trial court functions as the trier of fact, and, therefore, is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of any witnesses." State v. Molek, 11th Dist. No. 2001-P-0147, 2002-Ohio-7159, at ¶ 24, citing State v. Mills (1992),62 Ohio St.3d 357, 366. "The court of appeals is bound to accept factual determinations of the trial court made during the suppression hearing so long as they are supported by competent and credible evidence."State v. Hines, 11th Dist. No. 2004-L-066, 2005-Ohio-4208, at ¶ 14
(citation omitted). When ruling on a motion to suppress, we give due deference to the trial court's assignment of weight and inferences drawn from the evidence. State v. Perl, 11th Dist. No. 2006-L-082,2006-Ohio-6100, at ¶ 9 (citation omitted). "Accepting the trial court's determination of the factual issues, the court of appeals must conduct a de novo review of the trial court's application of the law to those facts." Hines, 2005-Ohio-4208, at ¶ 14 (citations omitted).
 {¶ 12} In her first assignment of error, Schmucker claims that the trial court's holding that the display of two different plates gave rise to the reasonable suspicion to stop Schmucker's vehicle was in error. We disagree.
 {¶ 13} A police officer may stop an individual if the officer has a reasonable suspicion, based on specific and articulable facts that criminal behavior has occurred or is imminent. Terry v. Ohio (1968),392 U.S. 1, 21. Moreover, detention of a motorist is reasonable when there exists probable cause to believe a crime, including a traffic violation, has been committed. Whren v. United States (1996), 517 U.S. 806, 810. *Page 5 
 {¶ 14} When evaluating the propriety of an investigative stop, a reviewing court must examine the totality of the circumstances surrounding the stop as "viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." State v. Andrews (1991), 57 Ohio St.3d 86, 87-88. "The court reviewing the officer's actions must give due deference to the officer's experience and training, and view the evidence as it would be understood by those in law enforcement." State v. Teter, 11th Dist. No. 99-A-0073, 2000 Ohio App. LEXIS 4656, at *8 (citations omitted).
 {¶ 15} In Bowling Green v. Godwin, 110 Ohio St.3d 58, 2006-Ohio-3563, the court explained "the fact that appellee could not be convicted of failure to obey a traffic-control device is not determinative of whether the officer acted reasonably in stopping and citing him for that offense. Probable cause does not require the officer to correctly predict that a conviction will result." Id. at 15. The court based its decision on the reasoning from United States v. Wallace (C.A.9, 2000),213 F.3d 1216, 1220, reasoning that "[w]e agree with the sentiment expressed in a federal case involving an officer who stopped a vehicle based on the mistaken belief that the windows were tinted darker than the law permitted. The court observed that the officer `was not taking the bar exam. The issue is not how well [the officer] understood California's window tinting laws, but whether he had objective, probable cause to believe that these windows were, in fact, in violation.'" Id. at ¶ 15.
 {¶ 16} In State v. Walters, 12th Dist. No. CA2004-04-043, 2005-Ohio-418, an officer effectuated a stop for a violation of a No Left Turn" sign which subsequently became an arrest for DUI. Id. at ¶ 2. The sign did not conform to the Ohio Manual of Uniform Traffic Control Devices as required by R.C. 4511.11 and, therefore, there was *Page 6 
no actual violation of the law. On this basis, the trial court suppressed the evidence obtained during the stop. Id. at ¶ 3. The court of appeals reversed, emphasizing that the proper test is not whether a traffic violation had occurred, but whether the officer's belief that a violation had occurred is objectively reasonable. Id. at ¶ 10.
 {¶ 17} Consequently, the issue in the present case is not whether Patrolman Dick understood the subtleties of license display law, but whether he reasonably believed that the law had been violated.
 {¶ 18} R.C. 4549.08 is Ohio's statute on the use of authorized plates. It provides that "[n]o person shall operate or drive a motor vehicle upon the public roads and highways in this state if it displays a license plate or a distinctive number or identification mark that * * * [i]s fictitious; [i]s a counterfeit or an unlawfully made copy of any distinctive number or identification mark;" or "[b]elongs to another motor vehicle".
 {¶ 19} In the present case, when Patrolman Dick observed Schmucker's vehicle he saw a metal license plate on the front of the car and as the vehicle passed him, he noticed that there was a different temporary placard license on the car. A reasonable inference from Patrolman Dick's observation of two different license plates was that one of the plates was invalid.
 {¶ 20} Additionally, we can infer a reasonable suspicion to stop Schmucker's vehicle for improper display of license plates. R.C. 4503.21
controls the display of license plates or temporary placards. It provides two options for display. The first option mandates that the "owner or operator of a motor vehicle" is in violation if he or she "fail[s] to display in plain view on the front and rear of the motor vehicle the distinctive number and registration mark". R.C. 4503.21(A). The second option is for a person who has been issued a temporary license placard. The statute provides that "no *Page 7 
operator of that motor vehicle, shall fail to display the temporary license placard in plain view from the rear of the vehicle". R.C. 4503.21(A).
 {¶ 21} Seeing as Schmucker had two different types of plates, a permanent metal license on the front and a temporary placard on the rear of her vehicle, she was not accurately following either of the options for display that R.C 4503.21 mandates. Assuming arguendo, that Schmucker did not explicitly violate either statute, based on the fact that she had two different license plates on her car, Patrolman Dick still had probable cause to make the stop. "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. By hypothesis, therefore, innocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to sub silentio impose a drastically more rigorous definition of probable cause than the security of our citizens' demands." Illinois v. Gates (1983), 462 U.S. 213, 245 fn. 13.
 {¶ 22} Accordingly, we find that Patrolman Dick had a reasonable suspicion that an offense had been or was being committed and made a valid investigatory stop.
 {¶ 23} Additionally, Schmucker argues that her motion should be granted for the reasons set forth in Chatton, which held that "where a police officer stops a motor vehicle which displays neither front nor rear license plates, but upon approaching the stopped vehicle observes a temporary tag which is visible from the rear windshield, the driver * * * may not be detained further * * * absent some specific and articulable facts that the detention was reasonable." Chatton, 11 Ohio St.3d at 63. We disagree.
 {¶ 24} Chatton is distinguishable from the instant case. UnlikeChatton, Schmucker had a front license plate, which upon further investigation was found to be invalid, and a temporary license placard on the rear, with a completely different number *Page 8 
than the front plate. Even after Patrolman Dick approached the vehicle, there was still suspicion that an offense had been or was being committed because of the two different plates. This is different fromChatton where the suspicion had been dispelled after the officer approached the vehicle and discovered the valid temporary placard.
 {¶ 25} We hold, therefore, that the trial court's findings of facts are supported by competent and credible evidence in the record. Based on those facts, Patrolman Dick had an objective basis to effectuate a stop. Patrolman Dick's further detention of Schmucker to dispel the suspicion was proper.
 {¶ 26} Schmucker's first assignment of error is without merit.
 {¶ 27} In her second assignment of error, Schmucker contends that the evidence presented was not legally sufficient to support her conviction and therefore the court erred in denying her Motion for Judgment of Acquittal.
 {¶ 28} Crim. R. 29(A) governs motions for acquittal and provides for a judgment of acquittal if the evidence is insufficient to sustain a conviction. "[A]n appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v.Laveck, 11th Dist. Nos. 2002-L-189, 2003-L-122, 2005-Ohio-62, at ¶ 70
citing State v. Jenks (1991), 61 Ohio St.3d 259, at paragraph two of the syllabus.
 {¶ 29} Schmucker was charged with violation of R.C. 4510.14, which provides "[n]o person whose driver's * * * license * * * has been suspended * * * for a conviction of a *Page 9 
violation of a municipal OVI ordinance shall operate any motor vehicle upon the public roads or highways within this state during the period of the suspension."
 {¶ 30} Schmucker specifically challenges that the state failed to "present evidence of the date that the offense was allegedly committed, * * * that the officer was a certified police officer * * * competent to testify * * * [and] in a marked police cruiser, and * * * that the person identified in State's Exhibit 1[1] was * * * the same as the Defendant in the instant case."
 {¶ 31} Schmucker argues that because of the failure by the State to introduce certain evidence, the testifying officer was incompetent to testify under Evid. R. 601(C), which provides that "[a]n officer, while on duty for the exclusive or main purpose of enforcing traffic laws, arresting or assisting in the arrest of a person charged with a traffic violation punishable as a misdemeanor where the officer at the time of the arrest was not using a properly marked motor vehicle as defined by statute or was not wearing a legally distinctive uniform as defined by statute," is not competent to testify.
 {¶ 32} There is a presumption that an adult witness is competent to testify; "the burden is on the defendant to establish the incompetency of a police officer as a witness on the ground that the officer was not wearing a legally distinctive uniform or was not using a properly marked vehicle at the time of the arrest." State v. Smith, 11th Dist. No. 98-P-0123, 2000 Ohio App. LEXIS 1204, at *7 (citation omitted). During the bench trial, Patrolman Dick testified that on the night in question he "was in a uniform similar to the one [he wore at trial] and driving a marked police vehicle equipped with lights and siren." Since the defense did not present any evidence to the contrary, Patrolman *Page 10 
Dick's testimony was sufficient to satisfy Evid. R. 601(C) and he was competent to testify.
 {¶ 33} Schmucker alleges the State failed to prove "beyond a reasonable doubt that she was operating a vehicle on a particular date and that on that particular date, her license was under suspension."
 {¶ 34} The State's Exhibit 1 was a certified copy of Schmucker's driving record issued by the Bureau of Motor Vehicles. Schmucker's name, address, date of birth, social security number, and Ohio Driver's license number were listed as well as the date, venue and case number for each of Schmucker's previous convictions/violations. The certification was signed by the registrar of the Bureau. The record indicated that on May 5, 2007, through October 31, 2007, Schmucker's license was suspended as a result of an OVI conviction, with limited driving privileges from June 19, 2007, through October 31, 2007.
 {¶ 35} Schmucker claims that there was no identification depicting Schmucker as the same person identified in the State's Exhibit 1. Evid. R. 902 provides the requirements for the self-authentication of a writing. In pertinent part, the rule provides: "A copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, * * * certified as correct by the custodian or other person authorized to make the certification * * * [is self-authenticating]". Evid. R. 902(4). The certification was signed by the registrar of the Bureau of Motor Vehicles and stated that the signatory was a "custodian of all the files and records of the Ohio Bureau of Motor Vehicles; that a search of the files has been made; and, that the attached documents are true and accurate copies of the records in [the signatory's] custody." The exhibit was properly admitted. Patrolman Dick identified *Page 11 
Schmucker in court. Certain dates and times set forth in the exhibit were corroborated by Patrolman Dick's testimony. We find that there was sufficient evidence to permit the trier of fact to conclude that Schmucker was the same person in the driving record exhibit.
 {¶ 36} The State attempted to obtain the date of the traffic stop via Patrolman Dick's testimony; however, he was unable to recall the exact date from memory. The State then asked another question in an attempt to elicit the date from Patrolman Dick; however, the testimony was again objected to by Schmucker and sustained by the court. Although the exact date was never elicited by the State, Patrolman Dick testified that he conducted a traffic stop of Schmucker's vehicle, found Schmucker operating the vehicle, and discovered Schmucker's license was suspended due to an OVI conviction on May 5, 2007. He further testified that he stopped Schmucker on a Saturday at 7:09 p.m., and her privileges were from 6:30 a.m. to 4:30 p.m., Monday through Friday. Additionally, he testified that upon investigation, he concluded Schmucker was driving under suspension, outside her privileges. Schmucker also indicated to Patrolman Dick that she knew she was not supposed to be driving, but she needed to purchase a pack of cigarettes.
 {¶ 37} After carefully considering the evidence presented in this cause, we find that there was sufficient evidence presented on every element of R.C. 4510.14, Driving Under Suspension, and the denial of the Motion for Judgment of Acquittal was proper.
 {¶ 38} Schmucker's second assignment of error is without merit.
 {¶ 39} For the foregoing reasons, the Judgment Entry of the Portage County Municipal Court, Ravenna Division, finding Schmucker guilty of Driving Under Suspension, is affirmed. Costs to be taxed against appellant. *Page 12 
MARY JANE TRAPP, J., concurs in judgment only with a Concurring Opinion.
COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.
[1] State's Exhibit 1 is a Driver Record Certification for Schmucker prepared and certified by the Ohio Bureau of Motor Vehicles.